Good morning, your honors. May it please the court, I'm Jeff Jared. I'm the pro se appellant and defendant in this case. And I'm the one that made the errors in this case during this foreclosure. But this case, this appeal is not really about liability. It's more about damages and whether negligent infliction of mental distress occurred or whether outrage occurred. And I want to point out right off the bat that the problems and errors that happened in this case were all on paper. They were all on paper. There was no evidence on the record of any damages to the plaintiff's credit. There was no out-of-pocket costs. I thought he did have evidence of that. I'm sorry? I thought he had evidence of damages to his credit that he I don't believe that was on the record, your honor. It was not. It was He had no damages to his credit. He's got three bankruptcies. Yes. He did have three bankruptcies. That is correct. That's so hard for his credit. That does harm his credit. But if I may continue, he had no out-of-pocket costs incurred except for maybe the filing of the bankruptcies. But there were no medical records introduced. There were no medical bills. There was no He never actually paid me a wrongful fee. He never paid a wrongful fee. And no foreclosure sale was actually ever held. And, again, this case is not a typical debtor- But he went into bankruptcy because he couldn't pay the wrongful fees, at least in part. Well, I think that's what the judge held. But going to causation, and my lawyer on her day at trial showed the real cause of this plaintiff filing bankruptcy. He couldn't make the mortgage payment. From the day the mortgage payment started, he fell behind. And at one point, he was thousands of dollars behind. That was the true cause of his filing for bankruptcy. And this is not a typical debtor exploitation case because the plaintiff had an attorney. He had like four or five attorneys. Except for the first, I think, couple, three weeks, he had an attorney representing him during this whole time. And plaintiff and plaintiff's counsel and the lower court, the BAP, they have not cited any single case where outrage has been found when someone was represented by a lawyer. I mean, when you have a lawyer, lawyers solve those things for you. And that's essentially what happened in this case. There's no case law for such an expansive view of attorney fees in the DOTA. The DOTA is the Deed of Trust Act. The BAP and plaintiff's counsel have not cited any case showing that DOTA can even get attorney fees through DOTA. But this case, and I think we forget that, this case was just a typical tort case, outrage, a tort case, but it was in federal bankruptcy court. And in a tort case, the plaintiff must pay their own attorney fees or their own costs. We don't have a loser pay system, and there was no prevailing party statute that applies here. And also, there's no case law showing a judicial notice that you can. What fee was awarded? Were all of the fees in the adversary action or some of them? I think it was $54,000 for Ms. Welsman, plaintiff's counsel, per the DOTA statute, per that. And there was also $15,000 for Mr. Green. Okay, but was that, what did those fees represent? Did they represent the fees in the bankruptcy? Mr. Green's fees, his $15,000 was in the separate bankruptcy case, where he was representing plaintiff in the separate bankruptcy case. Ms. Welsman's, plaintiff's counsel's fees were for her fees prosecuting this tort action. All of them? All of her fees prosecuting the tort action? I believe so. I believe so. Was that the $51,000 amount? $54,000. That's right. But that included the cost, didn't it? Maybe it did include the cost. It's $50-something thousand. Well, but this action was at least in part to collect the fees that were, with regard to the reasonableness of the fees that were necessary for reinstatement because at least part of her complaint was about your fees. Well, the complaint was for the tort of outrage. Well, I know, but part of the outrage was the fees, was the outrageousness of the fees and the fact that you were collecting them and so on, right? Right. So it seems literally that this was to determine the reasonableness of any fees demanded or paid as a condition to reinstatement, at least in part. But the DOTA statute, if we look at the attorney fee, the DOTA statute is essentially a defensive measure. When a foreclosure sale is coming down and you sue to block the sale, that's what the attorney fee provision in DOTA is about. I thought it specifically had affirmative suits as opposed to defensive ones. And the BAP got it wrong in their ruling. They viewed this case as an action for attorney fees, but it's a tort case. But part of the tort has to do with the reasonableness of the fees, no? Of my fees, of the fees I was charging, right. But it's not a loser-pays system. It's not a prevailing party attorney fee statute within DOTA. DOTA is about foreclosure, and this case is an after-the-fact tort action. And I want to – the trial court, when it cited the $60,000 general damage, it cited the case of Clopeful. And the facts of Clopeful are so much worse than the facts here. In Clopeful, the man continually violated restraining orders. He harassed his ex-wife. He threatened to kill her. He called her 700 times. Nothing this sinister here. So I think that – the court citing Clopeful is very misplaced. The record is really absent, I think, conscience-shocking facts. Negligence and rookie mistakes, yes, but I think conscience-shocking, no. And if I can just touch on the – I was going to maybe reserve a couple, three minutes, if I may. But I wanted to touch on the bias matter. In my 16 years of practice, I don't think I've ever seen a judge this biased. And I could read to you what the judge said, but before we even put on our case, the judge had ruled in her mind, the trial court had ruled, and he's about ready to put on his case damages that I believe have already been shown. I'm quoting from what the judge said. Mr. Jarrett has a long way to go to provide me with an explanation of all the mistakes and what I believe to be the negligent conduct in which he engaged, because as far as I'm concerned, we're almost done. That's the judge's quote before I even began my case. I think the judge essentially prejudged, entered the fray. And I know a judge can sort of berate a defendant when a court makes a ruling. A judge can sort of comment. But when the judge made that, what I'm calling the biased comment, it was on a phone conference for a housekeeping phone conference. There was no ruling made. So it was gratuitous, and I think it does show bias requiring that this case be made. The judge is reflecting what some submissions that had been made to the court, wasn't she? I mean, where does she get the impression that you've been overreaching? We had a day and a half of trial. The plaintiff had put on their case. I testified. We had a couple other witnesses. And before, there was gaps between the trial days, but before I brought my case, before I called my first witness, the judge effectively had decided, had prejudged. And that just goes to the very heart, I think, of what law is about. You're supposed to get a fair shake. Almost every time we actually find bias in a way that would cause reversal, it's something that has happened outside of the record, that the judge has an external influence that maybe the parties didn't even know about at the time and that creates partiality. But in the course of a trial, when a judge begins to get opinions about the case, it's pretty unusual to find reversible bias in that kind of a situation. Well, it was on the record. It was at this phone conference. And I had not stipulated to breach of fiduciary duty at that time. That stipulation came later. So at that time, the case was still open. There had been no real stipulation or admission. So if there's no more questions, I'll reserve a couple minutes for rebuttal, if I may. Thank you very much. Sorry. I need to bring these down. Good morning, Your Honors. My name is Melissa Hulsman for Mr. Cahey. I guess I want to just kind of cut to the chase and talk about the things that Mr. Jarrett was arguing to this court, with specificity to the comments he made here to this court. Because as is typified by the record in this case, Mr. Jarrett fails to understand or to correctly represent the history of this case. This case, starting with the timing of it, it took place first over two days. They were a few weeks apart because the court didn't have time. But there was two full days of testimony. During that time, I called all of my witnesses, including Mr. Jarrett. So Mr. Jarrett had an opportunity to, in essence, cross-examine himself during that period of time. Mr. Jarrett also called at least one, and I think possibly two, but I know one of his witnesses during that time frame because that's when we could accommodate that witness. So Mr. Jarrett had, in fact, put on a great portion of his case through his own cross-examination of himself, cross-examination of other witnesses, and calling his own witness by the time we got to the third day of trial, which he started out by stipulating to liability for breach of his duties under the Deed of Trust Act. Now Mr. Jarrett wants to continually ignore those duties and the requirements of those duties by continuing to characterize his egregious actions as mistakes. And, in fact, he repeatedly referred to them throughout the trial as hiccups. So when he demanded $36,000 as a lump sum payment for my client based upon language that was found nowhere in the note, he described that as a hiccup. When he started demanding attorney's fees that were never substantiated by time records, which he attempted to get into evidence, or excuse me, they came into evidence, but the court found them to be wholly insufficient. Every time he demanded one of those, he called those a hiccup. When he recorded a notice of default that was not to be recorded, he called that a hiccup. When he set the foreclosure sale date on the Friday after Thanksgiving, which would be considered a holiday, he called that a hiccup. There was at least, I believe, 10 recordings of notice of trustee's sales over the course of a few years that my client had to deal with. There was repeated demands for fees. Mr. Jarrett frankly takes what I contend is a patently offensive assertion to this court because it is untrue. He says that my client did not pay anything as a result of his actions. That is patently untrue, and the court made specific findings about that, which the BAPA upheld. There was an award, and I refer the court to the BAPA opinion on page 9. Fees and expenses paid by Mr. Cahey in his third bankruptcy case, those were awarded, and those totaled more than $15,000. All right, but what about the other fees? I'm getting to that. I'm sorry. I was about to observe that you might be able to view the adversary action as in some minor respect an effort to determine the reasonableness of the fees, but it was certainly about much more than that, and the question is are you entitled to all of the fees in that action, which were attempting to recover damages for much more than simply the fees? Okay. So first of all, the action was for breach of fiduciary duty under the deed of trust act. That's what the primary cause of action was, and everything else that came about, the other tort claims, which really ultimately just became the emotional distress claim after a few other causes of action. I presume a lot of the fees and a lot of the time went to that, and a lot of the claim distress had to do with the foreclosures and not with the fees, so it seems to be somewhat way beyond the sort of limited kind of action contemplated by the statute, which is an attempt to determine whether the fees were reasonable or not and whether you have to pay them. And I would respectfully absolutely disagree with you, Your Honor. What we have is a deed of trust act, and trustees under the deed of trust act under the Cox v. Holanianus decision, which is 22 years old, make it very clear that trustees have a very high duty to both sides of the transaction. They determine a fiduciary but then say it's not quite a fiduciary, but it's a very high duty, and when you breach that duty and you cause harm, there needs to be a penalty for that. And so in essence what you have is a trustee saying, well, gosh, I made a bunch of mistakes, and it's just too bad that it caused you significant harm over several years. I'm not talking about any of that. I'm talking about the fee provision. I'm not talking about the outrage. I've got whether the fees to establish all that are recoverable under the fairly limited language of the DOTA Act. Well, I certainly think that the DTA, DOTA, I'll refer to it as that, contemplates that you should get to challenge it. So in this case we did have a finding, a specific finding by the trial court, which Mr. Jarrett misrepresented to you, that the fees that he charged for the foreclosure process were unreasonable and outrageous, and the court granted that. And I think this action is at least in part that, but it's much more than that. So the question is do you get all the fees or only a proportional amount of them? Well, I certainly think that when you look at the attorney's fees to prosecute the case, certainly all the evidence that came into the case, all the briefing was necessary in order to get to that. So I don't know how in this case you would parse out the attorney's fees. In other words, you're talking about my attorney's fees for the work I did on the case. I don't know how you would parse it out since they're all commingled. In other words, the emotional distress arose from the wrongful and repeated initiations of the foreclosure sale. Okay, and that's not what the fees are recoverable for. The fees are not recoverable for establishing that the foreclosures were wrongful, but only for a determination of the reasonableness of the fees. I'm just going to grab my... I was trying to find the actual language in the Deed of Trust Act. It's in my brief. It's 6124... Oh, and I know. Okay. So it's RCW 6124090 Subset 1. It allows anyone who asks the court to determine the reasonableness of any fees demanded or paid as a condition of reinstatement of the deed of trust obligation to recover their attorney's fees and for the court to also, quote, render judgment accordingly. So I do think that that gives the court some latitude. I agree with you that the deed of trust contemplates that most of the disputes would normally be about fee. But, in other words, if we leave it with a court decision that, in essence, says that if a trustee violates the duties which are imposed upon them and then they are free from liability resulting from that breach of duty, if it's something other than charging too much in fees, then why would they adhere to the Act? I had a note that I think there was some $38,000 in damages for the breach of fiduciary duties. There was, and those came from attorney's fees that Mr. Cahey had to pay to Mr. Jarrett. Now, there was a little bit of that which were a few other attorney's fees paid, but the substantial portion of them were monies that went directly to Mr. Jarrett. And I think you're arguing that was proper to include that. Absolutely. And that we may have no disagreement with you on that. But there was some $51,000 in attorney's fees that were awarded, and it seemed like that was awarded for your fees in prosecuting the outrage tort in the adversary proceeding. Your Honor, it was my fees for bringing the entirety of the adversary proceeding, and that's what I'm talking about regarding I don't know how you separate out my work on trying the case as a whole and allocate some portion of it to the attorney's fees and some, excuse me, the tort of outrage and to the deed of trust act violations since they essentially were the same. I mean, I guess you could take out that part of the testimony or evidence when my client talked about the emotional response to it and that kind of work. But the vast majority of the case, if you look at the trial record, was all about Mr. Jarrett's actions and the impropriety of his actions, the inaccuracies in the money demands he made, the wrongful acts in taking actions, recording documents, and making demands that were, in fact, illegal. So there was a portion of the testimony that was about the emotional distress that those actions caused to my client. But the vast majority of the testimony and the work in the case was focused on the documents which showed the impropriety of the fees charged, Mr. Jarrett's bad, I guess, billing practices, I guess I could call them, all that. So that was the vast majority of the trial of the case. And so Mr. Jarrett wants to make this case about emotional distress. If you actually look at my closing, I actually asked the court only for $15,000 in emotional distress damages, and it was the court that felt a higher amount was appropriate based upon the clap-fill decision. So I was clearly focusing on the Deed of Trust Act violations, but inevitably we also, in course, included the outrage claim because of the emotional distress caused to my client by Mr. Jarrett's acts. But a lot of the Deed of Trust Act violations didn't have to do with fees either. Well, what the court focused on when she was looking at the outrage was the potential loss of one's home.  But it was money demands that my client kept meeting, and if you look at the fact record, over the course of years he kept carrying defaults. Mr. Jarrett asserts he filed bankruptcy because he couldn't pay the mortgage. Well, the court made a very specific factual finding to the opposite of that. Right, but the problem is that ordinarily in a tort case you can't recover fees. Absolutely. And here there is a fee provision available, but it seems to be a limited one, and that's really what we're struggling with. Well, I don't think the Deed of Trust Act limits it for any fees arising from the bad acts of a trustee. But it specifically does. I mean, it doesn't say anything about the bad acts of a trustee. It says an action to determine the reasonableness of any fees demands that are paid as a condition to reinstatement. And if his bad acts don't have to do with reasonable fees, it's not covered by this fee provision. Well, then I guess I'm not sure how the trial court would even try and parse out which one of his demands were based on false fees, which one of his bad acts was based upon recording things that weren't supposed to be recorded. Certainly the majority of his bad acts, as we can colloquially call them, were based upon fees. It was demands for escrow amounts that were not due. He never verified the amounts of escrow that should have been due. There was demands for payments that had been paid. There was demands for attorney's fees that were unearned. So the vast majority of them would have resulted ultimately from demands for fees. And again, I point the court back to the Cox v. Hellenius decision. And I guess I say that in that case, that was about essentially a bad bidding process. The trustee didn't properly deal with bidding. So that's essentially a bad act by a trustee. And the court in that case found liability for the trustee and awarded attorney's fees and costs for bringing that action. So that was something that would not exactly be – it's not even a case that was brought before the foreclosure sale. It was brought after the foreclosure sale. And the court still awarded fees. And so I can only point to the decisions of the Washington Supreme Court. And Cox has been essentially the law of our state for 22 years and the standard at which trustees are supposed to be held and what they were looking to. So certainly at that time, our act has changed a little bit in the last couple of years. But that was certainly the law in 2005. Can you tell me where in the Cox case there's a discussion about the recovery of fees? There actually isn't a great deal of discussion. I'm just saying that the court awarded them. But there's not a great deal of discussion. How do we know that? Pardon me? How do we know that it's awarded? I believe it was in the opinion. I'm sorry, I don't have the opinion in front of me. Okay. I do know the lawyer who did it. So perhaps my knowledge comes from that. But I'm virtually certain that it was in the case. I would have to double-check it, though. It may just have been in the last order that fees were awarded. It doesn't seem to be in the opinion from what I can tell. I'm sorry, Your Honor? From what I can see quickly, it doesn't seem to be in the opinion. There certainly was not a substantive discussion about it. But it nevertheless put the standard out for trustees. And, again, I just would urge this Court that if we don't have trustees, if they aren't potentially liable for their bad acts, then there's nothing to stop them from doing it. But he was liable for the bad acts. He ended up with a substantial judgment against him. He's complaining about it, but he did. Right. But if a borrower has to fund an attorney to litigate that case and is unable to recover it. But that's true. A penny toward is the problem. It's just the way our system works. But I don't think when you have a statute which allows for recovery of attorney's fees, I understand Your Honor thinks that it's more limited than I do. The legislature has demonstrated an intent that if somebody has to take action to stop something, that they are entitled to recover. And that makes sense given what's at potential risk. We're at potential risk of losing your home. It's an important matter, something that's at the heart of our society. Well, I'll be your time. Thank you very much. Thank you. I think I just have a couple, maybe three minutes. I'll try and be quick. But as Plaintiff's Counsel just said regarding the DOTA attorney fee provision, you need to take an action to stop something. And I'm reading from RCW 69.24.0902. There's a precondition before you can. It says any person entitled to cause a discontinuance of the sale can then have a right to request a court to determine reasonableness of fees. But the sale had already been stopped when this tort action started. So DOTA, I would submit, is no longer applicable at all. Doesn't that say before or after or something? I'm just reading from a snippet of the whole statute. Well, you might as well read the whole statute because it does say before or after. But you have to be entitled to cause a discontinuance of the sale. There must be a sale pending. And essentially the DOTA fee provision is a defensive act. If something's coming at you, the sale's happening, then you can block it and get your fees. But this, again, is an after-the-fact tort case. And I did want to say, if I may, the errors that were made, the moment they were I was notified about them, they were corrected. They were never proceeded with after I was notified of the mistakes. And true, Hellenius is the key case, the definitive case in this area. But in Hellenius, they held a sale. It was a rigged sale. I think the property was worth $100,000, and they sold it sort of an inside deal for $12,000. Here, there was no sale ever held. So I think the facts of Hellenius are falling apart. But you tried to hold three different sales, and that's why you had to file the bankruptcies. True. I was just distinguishing from – that is true, from Hellenius. And I think the fact that a plaintiff was represented by counsel during this whole time, I don't think you can have shocking to the conscience things when someone's represented by counsel. This is not a typical debtor exploitation case. Well, does that mean if somebody's represented, you can be as outrageous as you want? Well, you have a lawyer that can help you and run into court and get damages or contempt. That's what lawyers do. But that doesn't affect – the judgment is a judgment about your behavior, not a judgment about whether he has the means to counter your behavior. Fair enough. I think – but I do think it goes to the outrageousness. It's just not shocking to the conscience what happened. And I'll leave it with that. Thank you. Thank you very much. The case of Keehey versus – or Jared versus Keehey is submitted.
judges: Canby, Thompson, Berzon